**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

J<small>OHN</small> B<small>ASS</small>,

       Defendant/Petitioner,

v.                                                  Case No. 97-80235

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,            Honorable Arthur J. Tarnow
                                                          Senior United States District Judge

       Plaintiff/Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 [1091]
## AND
## DENYING MOTION TO AMEND THE MOTION TO VACATE [1094]

### I. INTRODUCTION

Before the Court is Petitioner's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 [1091] which was filed on June 9, 2008. Petitioner also filed a Motion to Amend the Motion to Vacate [1094] on July 14, 2008, which was followed by an Amended Motion to Vacation Sentence Pursuant to 28 U.S.C. 2255 [1095] filed on July 14, 2008. The government filed a response. All filings relate to the underlying criminal case, 97-80235, and will be addressed below. For the following reasons, the Court DENIES the Motion to Vacate Sentence and DENIES the Motion to Amend.

### II. BACKGROUND

Petitioner was convicted of the first degree murder of Armenty Shelton and for conspiracy to distribute five or more kilograms of cocaine and fifty or more grams of cocaine base. He was sentenced to life without the possibility of parole on Count One and a concurrent

life sentence on Count Three. His direct appeal was denied. Petitioner's 28 U.S.C. § 2255 motions raise the claim that his Sixth Amendment right to the effective assistance of counsel was violated.

### III. DISCUSSION

**A. Motion to Vacate Sentence Pursuant to 28 U.S.C. 2255 [1091].**

Section 2255 of Title 28 U.S.C. provides that "a prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . or is otherwise subject to collateral attack" may move to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255 (2006). The court may provide a remedy if there is a finding that there has been "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.*

In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-part standard required by *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. As to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" or "sound trial strategy." *Id.* at 689. As to the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. More

2

than speculative assertions are required. *Bowen v. Foltz*, 763 F.2d 191 (6th Cir. 1985).

### 1. Failure to Enforce Subpoena and Call Witnesses

Petitioner argues that his constitutional right to effective assistance of counsel was violated when certain witnesses were not called to testify at trial.

#### a. Christopher McGlown[1]

Petitioner complains that Christopher McGlown should have been subpoenaed to impeach the testimony of Carl Gooden, the government's main witness as to the charge of murder of Armenty Shelton.[2] Petitioner argues that if McGlown had been subpoenaed, the defense could have called Gooden's credibility into doubt. McGlown wrote a letter stating that Gooden told him that he intended to lie on the stand and that he had coordinated with Byron Amar to align untruthful testimony. The letter also included details of preferential treatment given to Gooden at the Wayne County Jail such as leave to sell drugs and engage in sex acts with female prisoners and guards.

Petitioner's counsel had the opportunity to use the U.S. Marshall Service to ensure McGlown's presence at trial. The government also stipulated to the admission of McGlown's letter that could have been used to impeach Gooden's testimony. However, defense counsel did

---

[1]The government inconsistently refers to McGlown as "McGowen" and "McGowan" throughout its briefs.

[2]Petitioner claims that McGlown was never subpoenaed at all. Petitioner includes an affidavit from McGlown stating the same. However, the government claims that McGlown was subpoenaed but simply failed to show up, citing to the trial record. The existence of a subpoena does not change the Court's analysis.

not secure McGlown for live testimony and did not submit the letter for impeachment.

Although Petitioner finds counsel's failure to present McGlown's testimony or letter as a poor decision, Petitioner has not shown that counsel's performance was deficient. Here, there were some serious concerns with allowing McGlown's letter and testimony to be presented to the jury. For example, the government argued that it would have liked for McGlown's testimony and letter to be admitted, as it would make its case stronger. The government argues that the letter would have been counterproductive, discrediting McGlown when read in its entirety. The government was eager to categorize McGlown's letter as a "jailhouse fantasy." The government also argues that there were factual allegations in the McGlown letter that would have been inconsistent with matters that the government would have put in the record. Thus, actually bolstering Gooden's credibility.

Considering how damaging McGlown's letter and testimony could have been, Petitioner has not shown that counsel's strategic decision was deficient in violation of his Sixth Amendment rights. Keeping McGlown out of the case could have been considered a sound trial strategy. The facts support a conclusion that trial counsel made an objectively reasonable decision to forgo the potential damaging effects of McGlown's involvement. *See Strickland*, 466 U.S. at 687-88 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance the defendant must show that counsel's representation fell below an objective standard of reasonableness"). Further, even if the failure to include McGlown's statements was deficient, Petitioner has not shown a reasonable probability of a different result had counsel called McGlown as a witness or used the letter. Petitioner's argument fails.

4

### b. Additional Witnesses

Petitioner further argues that he was under the impression that a self-defense theory would be presented at trial but was not. Petitioner claims that he did not know that the self-defense theory would not be asserted. He claims that he was left with no defense at all. He states that other witnesses, such as Jimmy Turner, Sabah Ammouri, Geneva Ashley, and Charles Bates should have been subpoenaed. He argues that these witness' testimony would have supported his theory of self-defense with respect to the Armenty Shelton murder.

Petitioner also filed an affidavit in support of his Motion to Vacate [1093] relating to self-defense. Petitioner reasons that this failure to call witnesses that could testify as to a self-defense theory warrants similar relief as to that which was granted in *Bigelow v. Williams*, 376 F.3d 562 (6th Cir. 2004). *Id*. at 571-73 (holding that failure to investigate a possible alibi witness is negligence which warrants vacating the judgment). However, Petitioner does not specify what the testimony of each witness would have been. Without more information, the Court cannot determine that counsel's decision to exclude the witnesses was unreasonable. The affidavit submitted by John Bass does not speak to the testimony that could have been provided by the other witnesses. As the government correctly argues, the affidavit generally speaks to Petitioner's own statements regarding self-defense. It is unclear how the potential named witnesses would have been able to corroborate the statements in the affidavit.

Further, the government responds that not calling the witnesses might have been sound trial strategy. If Petitioner had asserted self-defense, then he would essentially be admitting to murdering Shelton. This could have been very dangerous, considering he was facing the death

penalty if convicted. Petitioner has not shown that trial counsel's decision constituted ineffective assistance of counsel. Even if it were considered a deficiency within the meaning of the *Strickland* standard, Petitioner has not shown that there is a reasonable probability that the outcome would have been different. Petitioner's argument fails.

### 2. Sufficiency of Evidence

"The court reviews a sufficiency of the evidence claim . . . considering 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ostrander*, 411 F.3d 684, 690-91 (6th Cir. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). As stated in *United States v. Powell*, 469 U.S. 57 (1984), "[s]ufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt". *Id.* at 67.

Here, Petitioner argues that his counsel was ineffective for not objecting to the insufficiency of the evidence as to Count Three of the superceding indictment. It charged Petitioner with a murder in relation to a drug trafficking offense. Petitioner argues that the evidence provided at trial was inadequate to sustain the guilty verdict as to the murder of Shelton. Petitioner reasons that since the government's theory was that Shelton's murder was follow up to the murder of Patrick Webb and Petitioner was acquitted of Webb's murder that there was no basis for the jury to find that the murder was committed in relation to a drug trafficking offense. *Id.*

However, the evidence presented at trial, viewed in the light most favorable to the

government, supports a rational determination of guilty beyond a reasonable doubt. The government argues that the theory behind its case was that the murder of Shelton was part of a plan to give Petitioner control of the family drug business. This theory can stand without the conviction for Webb's murder.

Next, Petitioner argues that there was an insufficient nexus between Shelton's death and drug trafficking. In deciding whether a firearm was carried in relation to a drug trafficking offense, the Court considers the totality of the circumstances surrounding the commission of the crime. *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). The Court does not only focus on specific intentions, but considers other factors such as "the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime". *Id.* "The defendants sole purpose in carrying the firearm need not have been facilitation of the drug trafficking crime." *Id.*

Petitioner simply concludes that the connection between Shelton's death and drug trafficking was insufficient. Without more than a conclusory statement, the Court cannot find that trial counsel was deficient or that there is reasonable probability that the outcome would have been different if the objection was raised. Petitioner's argument fails.

### 3. Constructive Amendment of the Indictment

Next Petitioner argues that there was an error in the jury instructions that amounts to a constructive amendment or at the very least, a prejudicial variance. He argues that Count Three, relating to Shelton's murder in relation to a drug trafficking offense was constructively amended by the "erroneous jury instructions" and should be vacated. Trial Counsel did not object to the

7

jury instructions. The Court instructed the jury as follows:

> The phrase "during and in relation to" the commission of an offense means that there must be a connection between John Bass, the firearm, and the crime of violence so that the firearm facilitated the crime by serving some important function or purpose of the criminal activity.

(Tr. 8/7/03, 1834).

Bass specifically takes issue with the words "and the crime of violence." He includes an extensive quote from *United States v. Budd*, 496 F.3d 517 (6th Cir. 2008) in his motion brief. He does not, however, explain how the case is analogous to his case.

> A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment.

*United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978), *cert. denied*, 454 U.S. 860 (1981). The three types of variations between grand jury indictments and evidence presented at trial are: 1) an actual amendment which alters the charging terms, 2) a variance where the evidence at trial proves facts materially different from the unchanged indictment, and 3) a constructive amendment where the terms of an indictment are "in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant maybe have been convicted of an offense other than that charged in the indictment." *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (internal citations omitted).

The difference between a variance and an amendment has been called "shadowy," but is considered significant because "amendments are deemed prejudicial *per se*." *Id.* (emphasis

added) (quoting *United States v. Burkhart*, 682 F.2d 589, 591 (6th Cir. 1982)). However, variances will only lead to a reversal if a defendant's "substantial rights" have been affected. *Id.* To show that one's substantial rights have been affected the defendant must show "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Id.* (citing *United States v. Miller*, 471 U.S. 130, 138 n. 5 (1985)).

A variance becomes a constructive amendment when the variance creates "'a substantial likelihood' that a defendant may have been 'convicted of an offense other than that charged by the grand jury.'" *Hathaway*, 798 F.2d at 911 (citing *Beeler*, 587 F.2d at 342). Here, there is jury instruction does not meet that standard, and thus, the only potential issue is whether the jury instruction was a variance.

However, "[B]ecause variances between indictments and proof at trial are not regarded as *per se* error, the burden of proof as to error has been placed on defendants, who must not only show the variance exists but also that the variance is 'fatal.'" *Id.* (emphasis added). As the government argues, the jury instructions included the first two elements of the crime: 1) Defendant committed a drug offense charged in Count One of the indictment and 2) in relation to the charge in Count One, he used a firearm. Here, Petitioner has not shown any prejudice. His argument fails.

**B. Motion to Amend Pending Motion to Vacate Sentence [1094].**

9

Petitioner moves to amend his § 2255 motion to include an ineffective assistance of appellate counsel claim related to a Speedy Trial Act issue. Assuming that the merits of the Petitioner's motion can be addressed, such an amendment would be futile.

"The [Speedy Trial] Act requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried seventy days after his indictment or the date he first appears in court, whichever date last occurs." *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996). Courts consider three factors when deciding whether to dismiss an indictment with or without prejudice under the Speedy Trial Act: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1).

Here, even if there were a Speedy Trial Act violation, all three factors weigh toward a dismissal without prejudice. First, Petitioner was charged with involvement with a serious drug distribution conspiracy relating to multiple murders. The charged crimes were so serious that Petitioner was eligible for the death penalty. Second, Petitioner has not shown that there was any evidence of bad faith or any attempt to take advantage of the delay on the part of the prosecution. Third, Petitioner has not articulated actual prejudice as a result of his counsel's concessions. There is no allegation that the government acted in an improper way which must be deterred in order to ensure compliance with the Act. Considering these factors, any dismissal under the Act would have been without prejudice. *See Campbell v. United States*, 364 F.3d 727 (6th Cir. 2004) (holding that when all three factors weigh against dismissal without prejudice, the defendant's argument does not meet the *Strickland* test)).

Therefore, the motion to amend is DENIED.

## V. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Petitioner's Motion to Vacate Sentence is DENIED.

IT IS FURTHER ORDERED that Petitioner's Motion to Amend is DENIED.

IT IS SO ORDERED.

                          S/ARTHUR J. TARNOW

                          Arthur J. Tarnow

                          Senior United States District Judge

Dated: October 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 28, 2010, by electronic and/or ordinary mail.

                          S/LISA M. WARE

                          Case Manager