# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN BASS,

    Defendant.

                                /

Case No. 97-CR- 80235

HON. Arthur J. Tarnow

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE (Doc. # 1117)

  John Bass is a murderer and a drug dealer, sentenced to two concurrent life terms in prison. Bass and accomplices shot a man to death and then set fire to his car, immolating the body. For nearly a decade, Bass also ran a violent narcotics operation spanning three states. During the past four years of his incarceration, he has been disciplined for fighting and for being insolent to prison staff.  Bass was—and remains—a danger to the community.

  Bass began serving his sentence on March 22, 2004. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

1

Bass does not satisfy the substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Although Bass's heightened risk from Covid-19 based on his obesity establishes him as medically eligible for release under § 1B1.13(1)(A) & cmt. n.1(A), he is not otherwise eligible for release. Because of his history of murder, drug dealing, arson, and other violent acts, Bass is a danger to the community, which precludes release under USSG § 1B1.13(2). Bass is also ineligible because his justification for release is not "compelling." Finally, the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)— do not support release; Bass's extreme violent and anti-social history outweighs any conceivable countervailing factors.

Significantly, FCI McKean—the facility at which Bass is held—has not had a single inmate contract COVID-19 at that facility. FCI McKean currently has a population of 786 inmates, although it typically averages around 1,200. As of October 5, 2020, 182 inmates at FCI McKean have been tested for COVID-19. One of those tests is pending.

Four inmates tested positive at other facilities before recovering and being transferred to FCI McKean. None of the facility's staff members have tested positive.

Especially given the Bureau of Prisons' efforts to reduce the spread of COVID-19—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Bass's motion for compassionate release.

## Background

Beginning in the 1980s and continuing into the 1990s, John Bass ran a crack cocaine business spanning Michigan, Indiana and Ohio. *United States v. Bass*, 460 F.3d 830, 832 (2006). Bass was convicted of conspiracy to distribute cocaine and of the murder of Armenty Sheldon. *Id.* at 834. Bass, along with an associate, murdered Sheldon by firing handguns into his parked car. *Id.* Associates of Bass then set Sheldon's car on fire. *Id.* This Court sentenced Bass to two concurrent life sentences. Judgement, ECF No. 1047, PageID.335.

Bass's violent history extends beyond the offenses of his convictions. Trial testimony emphasized the violence of Bass's drug trafficking

3

organization. Witnesses described beatings to enforce discipline as routine. Presentence Investigation Report (PSR), ¶¶ 14-15. An associate of Bass's testified that he survived Bass shooting him in the chest, dousing him with alcohol, and setting him on fire. *Id.* at ¶ 15. Witnesses also testified that Bass ordered the murder of his own brother—although Bass was acquitted of that killing. *Bass*, 460 F.3d at 832.

Bass's prior criminal history includes arson, breaking and entering, and receiving stolen property. PSR, ¶¶ 51-59. Since incarcerated, he has been disciplined for fighting and insubordination, with both of these incidents occurring in 2017. Discipline Report, Exhibit 1.

Bass began serving two concurrent life sentences on March 22, 2004, and he is currently incarcerated at FCI McKean in Pennsylvania. He is 51 years old. Bass has now moved for compassionate release, citing his medical conditions and the Covid-19 pandemic. His only underlying COVID-19 CDC risk condition is obesity, as his BMI exceeds 40.[1] *See*

---

[1] In his motion, Bass claims to be asthmatic, to have suffered from a recent acute respiratory illness, and to utilize a C-pap machine—but these claims are not supported by his medical records. *See* 2019 and 2020 Medical Records, Exhibits 2 and 3 (filed under seal). He also claims to be diabetic, but his medical records reveal that he is merely at risk for diabetes. *See* 2020 Medical Records, Exhibit 3 at 69. Bass also claims to have high cholesterol, but his records do not support this as a COVID-19 risk factor. *Id.* at 68. Finally, while medical records support his claim to have high blood pressure, this is not factor definitively recognized as high risk by the CDC, and the records describe Bass's blood pressure as controlled by medication. *Id* at 4; *see also United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, *4–*5 (6th Cir. Sep. 17, 2020) (explaining that neither hypertension nor asthma is a confirmed risk factor for COVID-19)

4

2019 and 2020 Medical Records, Exhibits 2 and 3 (filed under seal). Bass has exhausted his administrative remedies prior to seeking release from the Court.

## Argument

**I. The Court should deny Bass's motion for compassionate release.**

Bass's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

A defendant must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

5

As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

In addition, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A. Bass is not eligible for compassionate release

Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a]

6

sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t). The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Commission fulfilled Congress's directive in USSG § 1B1.13, compliance with that policy statement is mandatory for any defendant seeking compassionate release under § 3582(c)(1)(A). The Supreme Court has already reached the same conclusion for compliance with USSG § 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there. *Dillon v. United States*, 560 U.S. 817, 827 (2010). And the statutory language in § 3582(c)(1)(A) is identical to the language in § 3582(c)(2). *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"), *with* § 3582(c)(2) (same). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute."

7

*United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014) (citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *Saldana*, 807 F. App'x at 819–20. Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in [Program Statement 5050.50](). USSG § 1B1.13 cmt. n.1.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Bass and other inmates. *See Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). Thus, "the mere

8

existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 961 F.3d at 845.

Bass's medical records, however, establish that he is obese (with a body-mass index over 40), which the CDC has confirmed is a risk factor that places a person at increased risk of severe illness from Covid-19. *See* [CDC Risk Factors](#) (as updated). Given the heightened risk that Covid-19 poses to someone with obesity, Bass has satisfied the first eligibility threshold for compassionate release during the pandemic. *See* USSG § 1B1.13(1)(A) & cmt. n.1(A).

But Bass remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As with the other requirements in § 1B1.13, this prohibition on releasing dangerous defendants applies to *anyone* seeking compassionate release. 18 U.S.C. § 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13);

9

*United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (confirming that a released defendant must "not represent a danger to the safety of any other person or the community"). Although a court must also evaluate the defendant's dangerousness when balancing the § 3553(a) factors, dangerousness alone is a per se bar to release under USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2) references for its dangerousness determination—requires a comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988)). That reasoning applies even more strongly post-judgment, when the defendant's presumption

10

of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Section 1B1.13(2) is thus a significant hurdle to release. It bars the release of violent offenders. It bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *Knight*, 2020 WL 3055987, at *3.

Because Bass's release would endanger the community, sentence reduction is prohibited under § 3582(c)(1)(A). Bass is a murderer, a drug-dealer, and an arsonist. For nearly a decade, he ran a violent narcotics operation spanning three states, an organization that routinely enforced discipline with beatings. He reportedly ordered his own brother killed. Including his murder victim, Bass shot two people who were then set on fire.

The statutory criteria and Sixth Circuit case law requires taking Bass's conduct before entering prison into account in assessing his dangerousness should he be released. *United States v. Ward*, 2020 U.S.

11

App. Lexis 30955, No. 20-5743, at *5 (6th Cir. October 1, 2020). As acknowledged by the fact that this Court, following the recommendation of the jury, sentenced Bass to life in prison, the violent threat that Bass poses to the community does not expire with time. Imprisonment has taken away the opportunity for Bass to further terrorize society, and nothing in Bass's record behind bars suggests that this threat has been erased. Indeed, within the past four years in prison he has been disciplined for fighting and for being insolent to a prison official. The danger Bass poses to the community remains plain and present, and thus he is ineligible for compassionate release.

Even if § 1B1.13(2) did not apply here, the plain language of the statute would prohibit releasing Bass. A defendant is only eligible for compassionate release under the statute if he can demonstrate that "extraordinary and compelling reasons warrant a reduction." 18 U.S.C. § 3582(c)(1)(A). So his reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) ("exceptional to a very marked extent"); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) ("beyond what is usual,

12

customary, regular, or common"). They must also be "compelling"—meaning "so great that irreparable harm or injustice would result if [the relief] is not granted." *Sapp*, 2020 WL 515935, at *3. And they must "warrant [the] reduction" that the defendant has requested. 18 U.S.C. § 3582(c)(1)(A). A defendant's reasons must satisfy all three criteria to make him eligible for compassionate release. *Id.*

Even assuming the combination of Bass's morbid obesity and the Covid-19 pandemic qualify as "extraordinary," his crimes and circumstances do not present a "compelling" reason for release. In the pretrial-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release during the Covid-19 pandemic. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020). It requires consideration of (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" the defendant's risk from Covid-19; and (4) the risk from Covid-19 that the defendant's release would pose to others. *McGowan*, 2020 WL 3867515,

13

at *2. The factors are not necessarily weighed equally, or apply in the same way in each case. *Id.*

As the word "compelling" suggests, those factors present a high bar for release. In *Bothra*, for instance, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting the virus." 2020 WL 2611545, at *2. But he was a flight risk, had participated in a large and complex fraud scheme, and was being detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit held that those circumstances did not present a "compelling" reason for release. *Id.*

This reasoning applies even more strongly here. Bass is two decades younger than the defendant was in *Bothra*. The "original grounds" for Bass's incarceration were a brutal first-degree murder and leading a violent drug organization for nearly a decade. Bass was also *convicted* of his offenses—not just accused of them, as the pretrial defendant was in *Bothra*. So the justice system's "essential" interest in finality is even stronger here than it was in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989). And, similar to *Bothra*, there are no pending cases of Covid-19 at Bass's prison facility, FCI McKean. Under the plain meaning of the

14

term "compelling," and the Sixth Circuit's cases interpreting it, Bass is ineligible for compassionate release.

Bass has also not shown that his circumstances "warrant" the sizable reduction in his murder sentence that he is requesting here. 18 U.S.C. § 3582(c)(1)(A)(i). The jury here recommended that Bass receive a sentence of life in prison, given the heinousness of his offenses. *United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006). Bass is still only 51 years old, which means that a decision granting him compassionate release right now would likely take decades off his sentence, contravening the jury's decision that Bass should spend even his waning years (including end-of-life treatment) in prison. A reduction of that magnitude is not "warrant[ed]" by the combination of Bass's obesity and a pandemic that our entire society faces right now. 18 U.S.C. § 3582(c)(1)(A)(i).

### B. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that

15

release is appropriate. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Bass eligible for compassionate release, the § 3553(a) factors should still disqualify him.

The nature and circumstances of Bass's offense. His history and characteristics. The need to protect the public. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence. All of these factors weigh against Bass's release. Given that his only qualifying medical condition is his obesity

16

and that not a single inmate has contracted COVID-19 while imprisoned at FCI McKean, the statutorily proscribed factors tilt overwhelmingly against his release.

John Bass is one of a rare category of offenders—offenders whose crimes are so severe, whose character is so anti-social that they are incarcerated for life. Bass's murder conviction was punishable by either death, life imprisonment, or a term of years. *United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006). The government sought the death penalty. A jury spared Bass's life, but recommended life in prison. *Id.* Granting Bass compassionate release is unwarranted and would be inconsistent with the jury's decision, a decision that directed that Bass be incarcerated for the rest of his life.

This Court recognized the gravity of Bass's crimes and the violent, anti-social nature of his character when it awarded him not one, but two, life terms. Nothing material has changed since his sentencing. Bass is presently healthy and serving his sentence at a facility with no prisoners or staff members infected with COVID-19. The need for just punishment and the need to protect the community require that Bass

17

serve out the life sentence that he was awarded by the jury and this Court.

## II. The Bureau of Prisons has responded to Covid-19 by protecting inmates.

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade, the Bureau of Prisons has maintained a [detailed protocol](#) for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for Covid-19 in January 2020. *Wilson*, 961 F.3d at 833–34.

On March 13, 2020, the Bureau of Prisons started modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *Id.*; *see* [BOP Covid-19 Modified Operations Website](#). Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 961 F.3d at 834.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure

18

that they receive any required medical care during these difficult times. Specific to Bass's circumstances, FCI McKean, so far, has a perfect record protecting its inmates from COVID-19.

### III. If the Court were to grant Bass's motion, it should stay the release order pending any appeal by the United States.

If the Court were inclined to grant Bass's motion, despite the government's arguments above, the government would request that the Court's release order include two provisions. First, the Court should order that Bass be subjected to a 14-day quarantine before release. Second, the Court should stay its order pending any appeal by the government to the Sixth Circuit. More specifically, the government would request that if the government files a notice of appeal before the 14-day quarantine ends, the Court's order would automatically be stayed through the completion of any appeal proceedings.

## Conclusion

Bass's motion should be denied.

                                                Respectfully submitted,

                                                Matthew Schneider
                                                United States Attorney

                                                <u>s/ Timothy J. Wyse</u>
                                                Timothy J. Wyse
                                                Assistant United States Attorney
                                                211 West Fort Street, Suite 2001
                                                Detroit, MI 48226
                                                Phone: (313) 226-9144
                                                timothy.wyse@usdoj.gov

October 5, 2020