UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOHN BASS,

    Defendant.
_____/

Criminal Case No. 97-80235-1

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**NOTICE AND CLARIFICATION AS TO ORDER [1133] OF JANUARY 22, 2021**

The following statement provides notice of a clerical error in the Court's January 22, 2021 Order [1133] regarding John Bass's term of supervised release. It also clarifies the Court's understanding of its role in deciding compassionate release motions. In short, this role is analogous to that traditionally exercised by a parole board. The Court looks to the record of the person seeking release, including their personal history, criminal history, sentence, conduct in prison, present circumstances, as well as the factors set forth by Congress in 18 U.S.C. § 3553(a). Implicit in the consideration of these variables is the question of public safety.

**PROCEDURAL BACKGROUND**

On August 11, 2003, a jury convicted John Bass of Conspiracy to Distribute Five Kilograms or More of Cocaine and 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §846, and Firearms Murder During or in Relation to a Drug

Trafficking Crime, in violation of 18 U.S.C. §924(j). Upon conviction, the Government sought, and the jury denied, a sentence of death, and imposed a sentence of life without parole as to the capital count. (ECF No. 1007). On March 11, 2004, the Court sentenced Bass to two concurrent terms of life in prison. (ECF No. 1047).

On August 27, 2020, the Clerk's office docketed a letter from Bass dated June 28, 2020 requesting compassionate release in light of his health conditions and the COVID-19 pandemic. (ECF No. 1117). On September 14, 2020, the Court appointed counsel and, at the Government's request, set an extended briefing schedule. (ECF No. 1119). Following a hearing on October 13, 2020, the Court ordered the parties to submit additional briefing addressing Bass's re-entry plan, recidivism level calculation, rehabilitation efforts, and cooperation with the Government from prison. (ECF No. 1127). Those briefs were submitted in mid-December. (ECF No. 1129; ECF No. 1130). On January 22, 2021, after significant deliberation, the Court granted Bass's Motion to Reduce Sentence [1117]. (ECF No. 1133).

On January 29, 2021, the Government appealed the Court's Order [1133] to the U.S. Court of Appeals for the Sixth Circuit and sought an emergency stay, which was granted on February 5, 2021. *United States v. Bass*, No. 21-1094, slip op. at 8 (6th Cir. Feb. 5, 2021). Through the Court of Appeals' Order and the underlying briefing, the Court became aware of an error as to Bass's term of supervised release, about which it now provides notice. The Court also takes this opportunity to provide

clarification as to how it views its role in compassionate release cases. These clarifications are not intended to expand, modify, or in any way alter the Court's Order [1133] at this time.

### NOTICE OF MISTAKE AS TO THE SUPERVISED RELEASE TERM

The Order from the Court of Appeals stated that "the district court reduced [Bass's] term of supervised release (which applied only to his conspiracy charge) from five years to three years." *Bass*, slip op. at 6. The Court agrees that its Order [1133] did, indeed, reduce Bass's term of supervised release, however, it did so inadvertently. The Court intended to keep the same term of supervised release specified in its original Judgment. (ECF No. 1047, PageID.336). Its failure to do so was a clerical error.

### CLARIFICATION

Congress's implementation of the compassionate release statute came shortly after it abolished the United States Parole Commission. "In the Sentencing Reform Act of 1984, Congress abolished federal parole and forbade the federal courts from 'modify[ing] a term of imprisonment once it has been imposed[.]'" *United States v. Jones*, 980 F.3d 1098, 1103-04 (6th Cir. 2020) (alterations in original) (citing Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a), 98 Stat. 1837 (1998) (enacting 18 U.S.C. § 3582(c))). Congress did, however, recognize that there may be "cases in which an eventual reduction in the length of a term of imprisonment is

justified by changed circumstances." S. REP. NO. 98-225, at 55 (1983). It accordingly carved out an exception for those cases that came to be known as compassionate release. *Jones*, 980 F.3d at 1103. "These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment." S. REP. NO. 98-225, at 55-56 (1983).

Despite this, the Parole Commission, a three-member panel in Washington D.C. with hearing examiners in each region, argued that it should be retained to ultimately decide each defendant's release date after he or she was sentenced by a judge. *See* S. REP. NO. 98-225, at 52-53; ISAAC FULWOOD, U.S. DEP'T OF JUSTICE, U.S. PAROLE COMM'N, HISTORY OF THE FEDERAL PAROLE SYSTEM, at 1 (2003). Congress "strongly disagree[d] with the Parole Commission" and firmly established that "the better view is that sentencing should be within the province of the judiciary." S. REP. NO. 98-225, at 53-54. In doing so, Congress rejected maintaining the "expensive and cumbersome Parole Commission" to determine if early release was appropriate and "provide[d] instead [via] 18 U.S.C. 3583(c) for court determination . . . of the question whether there is justification for reducing a term of imprisonment." *Id.* at 56. Effectively, through 18 U.S.C. 3583(c), Congress placed the sentencing judge in the shoes of the now defunct Parole Commission.

Today, compassionate release is widely understood as a means of protecting defendants from suffering harm due to unforeseen changed circumstances during their sentence. *See* U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50: Compassionate Release/Reduction in Sentence, at § 571.60 (2015) ("The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."); *see also* William W. Berry III, *Extraordinary and Compelling: A Re-examination of the Justifications for Compassionate Release*, 68 Md. L. Rev. 850, 860-61 (2009) (explaining that this approach "'keeps the sentencing power in the judiciary where it belongs, yet permits later review of sentences in particularly compelling situations'" (citing Crim. Div., U.S. Dep't of Just., Prosecutors Handbook on Sentencing Guidelines and Other Provisions of the Sentencing Reform Act of 1984, at 121 (1987))). This is more true than ever now, in light of the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, the spread of COVID-19, and the emerging consensus among the Courts of Appeals that "district courts need not consider [U.S.S.G. § 1B1.13] when ruling on [defendant-filed compassionate release] motions." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

In practice, this system works better than state and federal parole boards, because rather than being placed at the mercy of a decentralized body of arbiters, defendants are instead evaluated by the same judicial officer that has seen their case from arraignment, to trial, to sentencing: the judge. *C.f. The Parole Consideration Process*, MICH. DEP'T OF CORRECTIONS, https://www.michigan.gov/corrections/0,4551,7-119-1435_11601-22909--,00.html [https://perma.cc/VG5Z-J65C] (last visited February 7, 2021) ("Decisions for [Michigan] prisoners serving a life sentence are made by majority vote of all ten members of the Parole Board."); FULWOOD, *supra*, at 1. This transfer of release power also fulfills Congress's intention that sentencing not "be imposed in a mechanistic fashion," but rather that the judge "consider all the relevant factors in a case[,] . . . impose a sentence outside the guidelines in an appropriate case," and "thoughtful[ly] impos[e]" an "individualized sentence[]." S. REP. NO. 98-225, at 53 (1983).

Courts have "wide latitude" to exercise discretion in determining extraordinary and compassionate reasons to grant a compassionate release. *United States v. Morris*, No. 20-1669, 2020 U.S. App. LEXIS 29874, at *5 (6th Cir. Sep. 17, 2020); *see Elias*, 984 F.3d at 519; *see also United States v. Kincaid,* 805 F. App'x 394, 395 (6th Cir. 2020) ("[D]istrict courts have 'broad discretion to determine what sentence will serve [§ 3553(a)'s] statutory objectives.'" (alteration in original)

(quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009))). Rightfully so, as the sentencing judge is often the only judicial officer who has seen a defendant's case from beginning to end. *See Jones*, 980 F.3d at 1114 (referencing "the 'common scenario' where 'the district judge who sentenced the defendant is the same judge who considers the defendant's reduction-of-sentence motion'" (quoting *United States v. Keefer*, 832 Fed. App'x 359, 363 (6th Cir. 2020))).

At least seven different Assistant U.S. Attorneys have been assigned to Bass's case through its pre-trial, trial, post-conviction, compassionate release, and appellate stages. Likewise, all but one of Bass's five trial, post-conviction, and compassionate release attorneys are different from one another. This Court stands alone with the institutional memory of John Bass, not just as a case, but as a person.

This Court presided over Bass's three-week trial, during which witness after witness recounted his horrifying crimes. This Court sentenced Bass to two concurrent life terms upon the jury's verdict. This Court denied Bass's requests for relief under 28 U.S.C. § 2255. This Court, considering the severity of Bass's crimes, believed even at the compassionate release hearing that he had "earned" his original sentence. (ECF No. 1134, PageID.1323) ("So, again, so now I qualify as a trial Judge to repeat myself a third time. Mr. Bass earned his original sentence."). And this Court, using its unique perspective, carefully evaluated and ultimately decided that Bass had presented extraordinary and compelling reasons to be released. In doing

so, it honored the weight of what Congressional intent and statutory interpretation in sentencing — from the Sentence Reform Act through *United States v Booker*, 543 U.S. 220 (2005) — has bended toward: building a system that empowers judges to treat people like people. *See United States v. Weakley*, No. 20-5070, 2020 U.S. App. LEXIS 26814, at *3 (6th Cir. Aug. 21, 2020) ("[D]istrict courts have an obligation 'to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Pepper v. United States*, 562 U.S. 476, 487 (2011))).

As this Court often reminds the attorneys who appear before it in compassionate release hearings, its goal in proceeding through the § 3553(a) analysis is to evaluate defendants, not as they were at the time of their original sentencing, but as they are now. From a policy standpoint, looking to evidence of post-sentencing conduct incentivizes good behavior and disincentivizes bad behavior in prison. And ultimately, there is "no better evidence" when assessing the § 3353(a) factors than the defendant's post-sentencing conduct. *Pepper*, 562 U.S. at 491 (Melloy, J., concurring) (quoting *United States v. McMannus*, 486 F.3d 846, 853 (8th Cir. 2007)). Indeed, the Supreme Court has recognized that evidence of "rehabilitation may . . . critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, *but not greater than necessary*' to comply

with the sentencing purposes set forth in § 3553(a)(2)." *Id.* (emphasis added). That is what took place here.

The Court, after presiding over Bass's trial, sentencing him to life in prison, and denying his successive habeas petitions, was acutely aware of, and indeed, has spent years wrestling with, the depravity of Bass's crimes. It did not rehash every detail of those crimes because their severity was painfully clear from the record. Instead, based on nearly twenty-three years of experience with John Bass, the Court affirmed its belief that his crimes were "horrific," but that on balance, the § 3553(a) factors favored release. (ECF No. 1133, PageID.1277). The Court remains unaware of any caselaw requiring it to acknowledge in writing the weight it attributes every single piece of evidence considered in its § 3553(a) inquiry. In fact, the opposite is true. *See United States v. Navarro*, No. 20-5640, 2021 U.S. App. LEXIS 2409, at *6 (6th Cir. Jan. 28, 2021) ("[A] 'judge need not provide a lengthy explanation' for reducing a defendant's sentence 'if the "context and the record" make clear that the judge had "a reasoned basis" for reducing the defendant's sentence.'" (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018))).

## Conclusion

Since the COVID-19 pandemic began, forty-two individuals in fear for their lives have moved this Court for a sentence reduction pursuant to 18 U.S.C. §

3582(c)(1). As of the time the Court of Appeals issued its Order, thirty-two of those motions had been granted, two had been denied, and eight remained pending.

In passing the Sentencing Reform Act and the First Step Act, Congress transferred to district courts the discretionary power once held by the Parole Commission. As noted, Congress preferred release decisions to be placed within the judiciary, largely because the mechanical nature of the Parole Commission's release decisions failed to consider the individual circumstances of each petitioner. Accordingly, in reviewing requests for compassionate release, this Court has attempted to bring humanity to the process by conducting a hearing for every motion and evaluating petitioners as they are, not only as they were.

                                                                       s/Arthur J. Tarnow  
                                                                       Arthur J. Tarnow  
Dated: February 8, 2021               Senior United States District Judge